UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT SCOTT LIPPERT,<br><br>                Petitioner,<br><br>  v.<br><br>BRENT REINKE, Director of the Idaho<br>Department of Corrections,<br><br>             Respondent. | Case No. 1:13-cv-00228-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Robert Scott Lippert's Petition for Writ of Habeas Corpus, challenging his Clearwater County conviction of sexual abuse of a minor under the age of sixteen. (Dkt. 3.) The Petition is now fully briefed.[1] (Dkt. 13, 22.)

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 10.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is

---

[1] The Court will grant the parties' respective requests for extensions of time to file their briefing, and those briefs are deemed timely.

**MEMORANDUM DECISION AND ORDER - 1**

unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent Brent Reinke on December 14, 2013, and March 30, 2015. (Dkt. 14, 25.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

In 2005, Petitioner's daughter reported to police that, in March of 1998—when she was fifteen years old—Petitioner had instructed her "to model recently-purchased undergarments and swimsuits for him." (State's Lodging B-3 at 1.) Afterwards, Petitioner and the victim's mother "required that [the victim] allow [Petitioner] to give her a massage because she had complained of having a headache." (*Id*.) Petitioner "had [the victim] kneel in front of him, and he placed her head, face-down, in his lap. [Petitioner] then allegedly rubbed her scalp, shoulders, arms, and back for fifteen or twenty minutes, and [the victim] could feel that his penis became erect while her face was in his lap." (*Id*. at 1-2.)

Based on these allegations, Petitioner was charged in the Second Judicial District Court in Clearwater County, Idaho, of sexual abuse of a child under the age of sixteen. Petitioner was appointed a public defender. Prior to trial, Petitioner asked the court to appoint him a different attorney. (State's Lodging A-3 at 18.) The request was denied.

On the morning set for trial, Petitioner initially refused to leave his jail cell. (State's Lodging A-4 at 166.) Once present, Petitioner told the trial judge that his attorney

**MEMORANDUM DECISION AND ORDER - 2**

had not been adequately representing him, that he had fired his attorney, and that he was not prepared for trial. The trial court informed Petitioner that the trial would be taking place as scheduled. Petitioner's attorney continued to represent Petitioner through trial.

The jury found Petitioner guilty. The trial court imposed a unified sentence of 15 years in prison with 6 years fixed.[2] (*Id.* at 546.)

On appeal, Petitioner argued that the trial court did not conduct an adequate inquiry into his request for substitute counsel on the first day of trial, improperly denied Petitioner his right to represent himself, and improperly admitted evidence of prior bad acts under Idaho Rule of Evidence 404(b). (State's Lodging B-1.) The Idaho Court of Appeals upheld the admission of the Rule 404(b) evidence and rejected Petitioner's self-representation claim, but held that the trial court had not conducted an adequate inquiry into Petitioner's request for substitute counsel. (State's Lodging B-3 at 12-13.) Instead of vacating the conviction, however, the court remanded Petitioner's case and instructed the trial court to "conduct a meaningful inquiry to determine whether [Petitioner] possessed good cause for his request for substitute counsel on the morning of the first day of trial." (*Id.* at 14 (emphasis omitted).) Petitioner requested review in the Idaho Supreme Court, arguing only that the court of appeals incorrectly determined that he had not clearly expressed a desire to represent himself. (State's Lodging B-5.) The Idaho Supreme Court denied review. (State's Lodging B-6.)

---

[2]     Petitioner represented himself at sentencing, with his trial attorney assisting as standby counsel. Petitioner does not raise any sentencing-related claims in the instant Petition.

**MEMORANDUM DECISION AND ORDER - 3**

On remand, the trial court held a hearing on the issue of substitute counsel. Both Petitioner and former trial counsel testified at the hearing. (State's Lodging C-2.) The court concluded that Petitioner had not shown good cause for his request for substitute counsel. (State's Lodging C-1 at 36-51.) On appeal, Petitioner argued that the trial court should have appointed substitute counsel because the attorney-client relationship between Petitioner and counsel had broken down. (State's Lodging D-1.) The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. (State's Lodging D-3, D-5.)

Petitioner then filed the instant Petition, in which he asserts the following claims: (1) that Petitioner was deprived of his right to substitute counsel "due to various dissatisfactions with court-appointed counsel, and complaints of failed communication"; (2) that Petitioner was denied his right to represent himself; (3) that Petitioner was denied conflict-free counsel (a) "due to a breakdown in communication between [Petitioner] and counsel," and (b) because his trial counsel previously represented a family member and a business partner of Petitioner's; and (4) that Petitioner was deprived of his right to a fair trial when the trial court admitted, pursuant to Idaho Rule of Evidence 404(b), evidence of Petitioner's prior acts of sexual misconduct. (Dkt. 3-1.)

### HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death

**MEMORANDUM DECISION AND ORDER - 4**

Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances

where the state court's adjudication of the petitioner's claim

> (1)    resulted in a decision that was contrary to, or
>         involved an unreasonable application of, clearly
>         established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an
>         unreasonable determination of the facts in light
>         of the evidence presented in the State court
>         proceeding.

28 U.S.C. § 2254(d). Section 2254(d) applies to claims adjudicated on the merits in state

court. *Id*. A federal court reviews the state court's "last reasoned decision" in determining

whether a petitioner is entitled to habeas relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804

(1991).

When a party challenges the state court's legal conclusions, including application

of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative

tests: the "contrary to" test and the "unreasonable application" test. Under the first test, a

state court's decision is "contrary to" clearly established federal law "if the state court

applies a rule different from the governing law set forth in [the Supreme Court's] cases,

or if it decides a case differently than [the Supreme Court] [has] done on a set of

materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1) the petitioner must show that the state court—although identifying "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*,

**MEMORANDUM DECISION AND ORDER - 5**

529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the

**MEMORANDUM DECISION AND ORDER - 6**

claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be

correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This strict deferential standard of § 2254(d) applies to habeas claims except in the following narrow circumstances: (1) where the state appellate court did not decide a properly-asserted federal claim; (2) where the state court's factual findings are unreasonable under § 2254(d)(2); or (3) where an adequate excuse for the procedural default of a claim exists. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In those circumstances, the federal district court reviews the claim de novo. In doing so, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

On de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1168; *see also Sharpe v. Bell*, 593 F.3d 372, 377-78 (4th Cir. 2010) (holding that state court factual findings made outside the context of adjudicating a claim on the merits are entitled to the same presumption of correctness as factual findings made in the course of a merits adjudication). Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1). Rather, the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

**MEMORANDUM DECISION AND ORDER - 8**

**ANALYSIS**

**1.      Discussion of Claims 1 and 3(a)**

In Claim 1, Petitioner asserts that communication with his trial counsel, and therefore the attorney-client relationship, had broken down to such an extent that he was entitled to substitute counsel. (Dkt. 3-1 at 1.) In Claim 3, Petitioner asserts that he was denied the right to conflict-free counsel based on two theories: (a) that the breakdown in communication between Petitioner and his trial counsel created a conflict of interest; and (b) that his trial attorney had previously represented a family member of Petitioner, as well as Petitioner's former business partner, thereby creating a conflict of interest. (*Id.* at 10.)

Claim 3(a)—asserting a breakdown in communication as the basis of the conflict of interest—is essentially the same as Claim 1, which asserts that Petitioner should have been granted substitute counsel because of a breakdown in communication. Therefore, the Court will treat Claim 1 and Claim 3(a) as the same claim for purposes of considering whether Petitioner is entitled to habeas relief. Claim 3(b) will be discussed separately in Section 3(B), below.

**A.      *Specific Factual Basis of Claims 1 and 3(a)***

At a pretrial hearing, Petitioner asked the state trial court to replace his appointed attorney. According to Petitioner, his attorney was not adequately communicating with him about the case or meeting with him enough. Petitioner's counsel did not object to the request, but stated that he did not believe that the attorney-client relationship had broken

**MEMORANDUM DECISION AND ORDER - 9**

down. (State's Lodging A-3 at 18.) The trial court denied Petitioner's request for substitute counsel. (*Id*. at 20.)

On the morning of the first day of trial, Petitioner came to the courtroom, under protest, after initially refusing to leave his cell or change out of his jail clothing. (State's Lodging A-4 at 166-78.) Petitioner attended court that day only because, in his words, he "chose not to be carried." (State's Lodging A-4 at 178.) Petitioner protested the trial taking place, claimed that he had only been informed of the trial date the night before, and complained of his attorney's representation. The trial judge gave Petitioner a choice: be present for the trial as scheduled, or return to his jail cell while the trial was held in his absence. Petitioner chose to participate in the trial and was allowed to change clothes so he would not be wearing his jail attire in front of the jury. The trial court did not appoint Petitioner substitute counsel and the trial proceeded as scheduled.

After the Idaho Court of Appeals remanded the case back to the trial court, the court held an evidentiary hearing on Petitioner's request for substitute counsel, which had been made on the morning of trial. Petitioner testified that his trial attorney had previously represented Petitioner's aunt, Marciea Spencer. (State's Lodging C-2 at 10-11.) He testified that trial counsel had also previously represented Petitioner's former business partner, Richard Remin, in a property dispute with Petitioner that "did not go to court." (*Id*. at 11-13.)

Petitioner also testified as to his relationship with trial counsel. Petitioner stated that counsel would not answer his letters or provide him with legal books that he requested. (*Id*. at 13-14.) Petitioner also stated that counsel did not inform him of the

**MEMORANDUM DECISION AND ORDER - 10**

correct trial date until the night before trial and that Petitioner's numerous efforts to

"address the facts of [his] case with [counsel] got nowhere." (*Id*. at 15.) Petitioner also

complained that counsel made motions and arguments "without ever contacting

[Petitioner] or discussing prior to . . . hearings anything that [they] were arguing." (*Id*. at

20.) According to Petitioner, counsel refused to contact a potential witness, Pamela Scott,

or to visit the jail to discuss Petitioner's case. (*Id*. at 29-39.) Petitioner acknowledged that

trial counsel succeeded in excluding some of the Rule 404(b) evidence that the prosecutor

attempted to introduce into evidence, and that counsel discussed the case with Petitioner,

in the courthouse, after each of several hearings. (*Id*. at 22, 38-39.)

      Petitioner's trial counsel also testified at the hearing. With respect to the alleged

former representation of Ms. Spencer and Mr. Remin, counsel stated that he had not even

graduated from law school when he was supposedly representing Ms. Spencer and that,

although he had previously represented Mr. Remin with respect to a wage claim, he did

not recall dealing with any property issues for Mr. Remin, nor did he recall working with

Petitioner during counsel's representation of Mr. Remin. (*Id*. at 51-53.) Counsel also

testified that, as evidenced by the jail logs kept during the time period in question, he

visited Petitioner in jail at least 13 times. Counsel stated that these meetings involved not

only the charges at issue in the instant Petition, but also several other cases filed against

Petitioner during the same time period. (*Id*. at 54-57.) Counsel stated that he located the

potential witness, Ms. Scott, but that Petitioner changed his mind and told counsel not to

contact her or use her as a witness. (*Id*. at 57-60.) Counsel also contacted another

**MEMORANDUM DECISION AND ORDER - 11**

potential witness and determined, after speaking with her, that she would not be a helpful witness. (*Id*. at 60-61.)

Counsel testified that he discussed Petitioner's case with him on multiple occasions but that communicating with Petitioner—particularly after the hearing on the Rule 404(b) evidence—was quite difficult because "all [Petitioner] could do was tell [counsel] that [the witnesses] were lying." (*Id*. at 62.) Counsel acknowledged that he did not discuss much with Petitioner between the 404(b) hearing and the trial, although he did visit him in jail prior to trial. (*Id*. at 62-63.)

Counsel testified that communication had totally deteriorated by the time the trial began. (*Id*. at 75.) However, counsel recognized that Petitioner wrote notes to him throughout the trial regarding the case, and that they discussed Petitioner's notes, as well as the trial testimony in general, during breaks in the trial. (*Id*. at 64-65, 75-76.)

### B.    *Clearly-Established Law* [3]

Although the Sixth Amendment guarantees a criminal defendant the right to counsel, it does not guarantee an indigent defendant the right to counsel of his choice. *Gideon v. Wainwright*, 372 U.S. 335, 342-45 (1963); *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010) ("Indigent defendants have a constitutional right to effective counsel, but not to have a specific lawyer appointed by the court and paid for by the public."). Criminal defendants "who do not have the means to hire their own lawyers

---

[3]      With respect to the standard of law applicable to substitute counsel claims, Respondent does not limit his discussion to United States Supreme Court precedent. (Dkt. 13.) Thus, although the Court ultimately looks *only* to such precedent in reviewing the state appellate court's decision under 28 U.S.C. § 2254(d), the Court provides here a more fully developed standard of law, taken from decisions of the circuit courts of appeals, so that the context of Petitioner's claim and of Respondent's arguments can be appropriately addressed.

MEMORANDUM DECISION AND ORDER - 12

have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chtd. v. United States*, 491 U.S. 617, 624 (1989).

"[T]here is no automatic right to a substitution of counsel simply because the defendant informs the trial court that he is dissatisfied with appointed counsel's performance." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). Rather, good cause must exist for the appointment of substitute counsel. Good cause for substitution includes (1) a conflict of interest, (2) an irreconcilable conflict, or (3) "a complete breakdown in communication between the attorney and the defendant" such that the appointed attorney cannot provide an adequate defense. *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991).

Although "a serious breakdown in communication [between the defendant and his attorney] can result in an inadequate defense," *United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000), the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel," *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Therefore, problems in communication (or any other deterioration of the relationship) between a defendant and his counsel require the appointment of substitute counsel only if those problems are so profound that they affect the ability of counsel to present—or the ability of the defendant to participate in presenting—an adequate defense. *See Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982) (identifying the "timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in

**MEMORANDUM DECISION AND ORDER - 13**

a *total lack of communication preventing an adequate defense*" as factors that a court should consider when faced with a request for substitute counsel based on a breakdown in communication) (emphasis added).

### C.   The Idaho Court of Appeals' Rejection of Claims 1 and 3(a) Was Reasonable

Claims 1 and 3(a) allege that a total breakdown in communications between Petitioner and his trial counsel which required the appointment of substitute counsel. After the evidentiary hearing on the motion for substitute counsel, the trial court found that the communication issues between Petitioner and trial counsel did not preclude an adequate defense, and that Petitioner himself contributed to the difficulties in communication. (State's Lodging C-1 at 46-48.) Therefore, the court held that good cause did not exist for the appointment of substitute counsel:

> This Court is unpersuaded that a complete, irrevocable breakdown of communication occurred in the case at hand . . . . The Court finds that while communication between appointed counsel and [Petitioner] was difficult, *it had not irretrievably and completely broken down to the point that [Petitioner] could not aid in his own defense*. Further, [Petitioner] substantially contributed to the difficulty of communication through his own actions. Therefore, [Petitioner] has not established good cause for the motion for substitution of counsel on the morning of trial.

(*Id*. at 48 (emphasis added).)

On appeal following remand, the Idaho Court of Appeals agreed with the trial court that Petitioner had not shown good cause for his request for substitute counsel because, among other things, Petitioner's trial counsel "presented [Petitioner] with discovery, met with [Petitioner] to review the discovery, filed motions on behalf of

**MEMORANDUM DECISION AND ORDER - 14**

[Petitioner], discussed witnesses' testimony, located and interviewed witnesses on behalf of [Petitioner], . . . discussed whether [Petitioner] would testify on his own behalf, [and] . . . communicated with each other throughout the trial." (State's Lodging D-3 at 5.) The court also noted that Petitioner's counsel "visited [Petitioner] in jail thirteen times, discussed and agreed upon the disqualification of the initially-assigned trial judge, spoke with [Petitioner] prior to and after the preliminary hearing, . . . met with [Petitioner] at the jail shortly before [Petitioner's] trial to discuss the trial and, during the trial itself, communicated with [Petitioner] during breaks." (*Id.*)

The Idaho Court of Appeals' conclusion was not contrary to, or an unreasonable application of, clearly-established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court. The court appropriately analyzed Petitioner's claim regarding substitute counsel. Further, the state courts found that, although there was some breakdown in communication between Petitioner and his trial counsel, that breakdown was not so severe that it precluded as adequate defense.

The Court has found no United States Supreme Court case declaring a constitutional violation for failure to appoint substitute counsel where, as here, there is a breakdown in communication between a defendant and counsel, but that breakdown does not prevent the defendant and counsel from working together to adequately present a defense.

**MEMORANDUM DECISION AND ORDER - 15**

**2.     Discussion of Claim 2**

In Claim 2, Petitioner claims that the trial court denied him his constitutional right to represent himself.

### A.     *Specific Factual Basis of Claim 2*

On the first day of trial, while Petitioner was protesting having to proceed with the trial on that date, he told the judge, "I have no counsel. [He] is not my attorney. I've made that clear." (State's Lodging A-4 at 174.) Petitioner also said that he was "not prepared to be a part of this trial" and that he would like "some time to take a look at the law and see what my—how to respond." (*Id*. at 176, 178.) The trial court told Petitioner that he could either go forward with the trial as scheduled, with trial counsel's representation, or he could return to his cell while the trial proceeded without him. Petitioner chose to be present for the trial with the assistance of counsel.

### B.     *Clearly-Established Law*

Just as a criminal defendant has a Sixth Amendment right to counsel, so too does that defendant have the right to waive the assistance of counsel and to represent himself. *Faretta v. California*, 422 U.S. 806, 819 (1975). Therefore, when a criminal defendant "clearly and unequivocally declare[s]" that he wishes to proceed without counsel, the trial court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open." *Id*. at 835 (internal quotation marks omitted). If the defendant is competent to waive counsel, and his waiver of counsel knowing and intelligent, the defendant must be permitted to represent himself. *Id*.

**MEMORANDUM DECISION AND ORDER - 16**

### C.    The Idaho Court of Appeals' Rejection of Claim 2 Was Reasonable

In rejecting Claim 2, the Idaho Court of Appeals correctly cited *Faretta* as the

governing law with respect to claims of the denial of the right to self-representation.

(State's Lodging B-3 at 11.) The court of appeals went on to hold that the trial court was

not obligated to inquire as to Petitioner's desire to represent himself, because Petitioner's

expression of dissatisfaction with his trial attorney did not constitute a clear and

unequivocal demand to represent himself. (*Id*. at 15.) Petitioner stated to the trial court

that he would like additional time to "look at the law," establishing that he was not

prepared to waive counsel and represent himself at trial. (*Id*.)

The decision of the Idaho Court of Appeals on Petitioner's *Faretta* claim was not

contrary to, or an unreasonable application of, clearly-established Supreme Court

precedent, nor was it based on an unreasonable determination of the facts. Although

perhaps in the specific circumstances of this case, the better practice would have been for

the trial court—on the day of trial when Petitioner objected to the continued appointment

of his counsel—to inquire whether Petitioner wanted to represent himself, fair-minded

jurists could debate whether Petitioner clearly and unequivocally invoked his right to

self-representation, or whether he instead was expressing his dissatisfaction with his

appointed attorney in an effort to obtain substitute counsel. (State's Lodging A-4 at 166-

78.) Though Petitioner did state—rather ambiguously—that he did not have an attorney

and that he would like more time, he did not plainly state that he intended to represent

himself. The record supports the reasonableness of the state court's factual finding that

**MEMORANDUM DECISION AND ORDER - 17**

Petitioner did not unequivocally declare his intention to waive counsel. Therefore, Petitioner is not entitled to relief on Claim 2.

3.      **Discussion of Claims 3(b) and 4**

Respondent also argues that Claim 3(b)—that trial counsel had a conflict of interest based on his alleged prior representation of Petitioner's business partner and a member of Petitioner's family—and Claim 4—that Petitioner's due process rights were violated by the trial court's admission of evidence of prior sexual misconduct with other minors—are procedurally defaulted and thus cannot be heard on the merits. Respondent argues alternatively that these claims fail on the merits under de novo review. Petitioner does not contest Respondent's argument that Claims 3(b) and 4 are procedurally defaulted, but instead he argues that the default of those claims is excused under the cause and prejudice exception set forth in *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), and expanded in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013). Petitioner has not responded to Respondent's merits argument. (*See* Dkt. 22.)

The United States Supreme Court has held that federal courts are not required to address a procedural default issue before deciding other potentially dispositive issues. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Rather, where the question of procedural default presents a complicated question law and is unnecessary to the disposition of the case, a court may proceed to the merits. *Id*.; *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003); *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997).

**MEMORANDUM DECISION AND ORDER - 18**

This case presents complicated procedural default questions, including (1) whether ineffective assistance of state postconviction counsel excuses the procedural default of Claim 3(b) under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012); (2) whether ineffective assistance of postconviction counsel excuses the procedural default of a claim of ineffective assistance of direct appeal counsel under *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013), to the extent that Petitioner asserts a direct appeal ineffectiveness claim; and (3) whether ineffective assistance of direct appeal counsel, in turn, can excuse the procedural default of Claim 4 under *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).

This complicated three-tiered cause and prejudice analysis may be rendered unnecessary if the Court first considers the merits of Claims 3(b) and 4. Therefore, rather than address the complicated procedural default questions identified above, the Court will consider Petitioner's claims on the merits. *See Samayoa v. Ayers*, 649 F. Supp. 2d 1102, 1115-16 (S.D. Cal. 2009) ("[W]here, as here, deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claims on their merits and forgo an analysis of cause and prejudice."), *aff'd*, 649 F.3d 919 (9th Cir. 2011). The Court finds that this is the most efficient way to address Claims 3(b) and 4, given the fairly recent changes in, and complexity of, the doctrine of cause and prejudice, which allows a federal court in certain circumstances to consider the merits of claims even if those claims are procedurally defaulted. *See Martinez*, 132 S. Ct. 1309; *Nguyen*, 736 F.3d 1287; *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER - 19**

**A.      Standard of Law for Claims Not Adjudicated on the Merits in State Court**

As explained previously, when reviewing a claim that was not adjudicated on the merits in state court, a federal district court is not limited by 28 U.S.C. § 2254(d). Rather, the claim must be reviewed de novo. *Pirtle*, 313 F.3d at 1167. Although de novo review may include the consideration of new evidence never presented to the state courts, *Murray v. Schriro*, 745 F.3d at 1000, in this case Petitioner has not brought forth any new evidence that was not before the trial court when it (1) held the evidentiary hearing on remand from the Idaho Court of Appeals with respect to Claim 3(b), or (2) held the hearing on the admissibility of the Rule 404(b) evidence with respect to Claim 4. Therefore, although the Court is not *required* to review only the state court record under § 2254(d), *see Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), in this case there happens to be no new evidence presented in federal court.

Because the facts underlying Claims 3(b) and 4 have been fully developed in state court, this Court must apply § 2254(e)(1)'s presumption of correctness to any state court factual findings. *See Sharpe*, 593 F.3d at 377-78; *Taylor*, 366 F.3d. at 1000-01 (setting forth the types of factual findings that are unreasonable under § 2254(d)(2), including where a state court makes a finding based on an inadequate evidentiary record); *Pirtle*, 313 F.3d at 1168 (stating that even on de novo review, "[n]onetheless, under AEDPA, factual determinations by the state court are presumed correct"). Petitioner has the burden of rebutting such factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**MEMORANDUM DECISION AND ORDER - 20**

**B.      Claim 3(b): Conflict of Interest Regarding Ms. Spencer and Mr. Remin**

Claim 3(b) asserts that Petitioner was denied his right to conflict-free counsel

because his trial attorney previously represented (1) Petitioner's aunt, and (2) Petitioner's

former business partner.

i.      Specific Factual Basis of Claim 3(b)

The trial court held that there was no actual conflict of interest between Petitioner

and trial counsel based on counsel's alleged former representation of Ms. Spencer or his

representation of Mr. Remin. (State's Lodging C-1 at 39-40.) This holding was based on

counsel's testimony, at the evidentiary hearing, that he had not represented Ms. Spencer

and, although he had previously represented Mr. Remin, he had not worked on any

property dispute between Mr. Remin and Petitioner. (*Id.*)

ii.      Conflict of Interest Standard of Law

The Sixth Amendment right to the effective assistance of counsel includes the

right of a criminal defendant to be represented by conflict-free counsel. *Wood v. Georgia*,

450 U.S. 261, 271 (1981). A *potential* conflict of interest, however, is not enough. *Cuyler*

*v. Sullivan*, 446 U.S. 335, 350 (1980) (stating that the mere "possibility of conflict is

insufficient to impugn a criminal conviction"). Instead, a petitioner asserting an attorney

conflict-of interest claim must "show that potential conflicts impermissibly imperil[ed]

his right to a fair trial." *Id.* at 348 (internal citations omitted). A conflict of interest rises

to the level of a constitutional violation only if the defendant's attorney has an *actual*

conflict of interest "*that affected counsel's performance*—as opposed to a mere

**MEMORANDUM DECISION AND ORDER - 21**

theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 170 (2002).[4] When a

trial court is made aware of an attorney's potential conflict of interest, that court must

either appoint new counsel or take adequate steps to determine whether the risk of an

actual conflict is too remote to warrant appointment of new counsel. *Holloway*, 435 U.S.

at 484.

      iii.      Claim 3(b) Fails on De Novo Review

Because the trial court's decision on Petitioner's conflict of interest claim—that

there was no actual conflict of interest based on the relationships between counsel and

Ms. Spencer or Mr. Remin—rested on the testimony of Petitioner's former counsel, the

trial court implicitly found (1) that counsel's testimony was credible, and (2) that

Petitioner's testimony to the contrary was not. Credibility findings are the quintessential

type of findings generally left to the finder of fact, who hears the witness's testimony and

observes his or her demeanor:

> All aspects of the witness's demeanor including the
> expression of his countenance, how he sits or stands, whether
> he is inordinately nervous, his coloration during critical
> examination, the modulation or pace of his speech and other
> non-verbal communication may convince the observing trial
> judge that the witness is testifying truthfully or falsely. These
> same very important factors, however, are entirely
> unavailable to a reader of the transcript . . . .

*Penasquitos Village, Inc. v. N.L.R.B.*, 565 F.2d 1074, 1078-79 (9th Cir. 1977).

---

[4]      Prejudice arising from a conflict of interest is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that "an actual conflict of interest adversely affected his lawyer's performance.'" *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (internal citations omitted). *See also Mickens v. Taylor*, 535 U.S. 162, 172-73 (2002) (rejecting the proposed rule of automatic reversal of a conviction where there existed a conflict that did not actually affect counsel's performance).

**MEMORANDUM DECISION AND ORDER - 22**

The trial court's implicit findings that Petitioner's counsel did not represent Ms. Spencer, or represent Mr. Remin in a property dispute with Petitioner, are presumed correct under 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted those findings by clear and convincing evidence; indeed, Petitioner has submitted no evidence at all to support his claims. Therefore, because trial counsel did not have an actual conflict of interest that affected counsel's performance, Petitioner is not entitled to relief on Claim 3(b).

### C.    Claim 4: Due Process Violation Based on Admission of Evidence of Prior Sexual Misconduct under Idaho Rule of Evidence 404(b)

Claim 4 asserts that the trial court violated Petitioner's right to due process under the Fourteenth Amendment by improperly admitting evidence of prior sexual misconduct.

### i.    Specific Factual Basis of Claim 4

At trial, the court allowed the following evidence of Petitioner's previous sexual misconduct, all of which involved Petitioner's other "pubescent daughters and stepdaughters living in his home":

- Testimony that Petitioner previously forced two of the girls to model underwear for him;

- Testimony that Petitioner had masturbated underneath a robe, in the bedroom of two of the girls, while the girls were in their beds;

- Testimony that Petitioner had come into one of the girls' rooms, pulled off the sheets, and touched the girl's breasts;

- Testimony that Petitioner had been seen straddling one of the girls and groping her breasts; and

- Testimony that Petitioner had previously given one of the girls a massage for a headache, which led to Petitioner straddling her and touching her breasts—behavior strikingly similar to that with which Petitioner was currently charged.

(State's Lodging A-4 at 142-44; 247-52; 280-81; 285-86.)

The trial court allowed this evidence as probative of (1) Petitioner's plan to "exploit and sexually abuse an identifiable group of young female victims," and (2) the absence of mistake, in that the evidence tended to show that Petitioner's "intent was sexual in nature to gratify the sexual desires of [Petitioner] or the alleged victim." (*Id.* at 142.)

ii.      Standard of Law for Due Process Evidentiary Claims

"Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Whelchel v. Washington*, 232 F.3d 1197, 1211 (9th Cir. 2000) (quoting *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987)). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). It is the province of the jury—not a federal court on habeas review—to sort out the permissible inferences from the impermissible ones. *Id.*

**MEMORANDUM DECISION AND ORDER - 24**

     iii.     <u>Claim 4 Fails on De Novo Review</u>

Having carefully reviewed the trial transcript, the Court concludes, on de novo review, that Petitioner is not entitled to relief on Claim 4. The witnesses' testimony regarding Petitioner's previous sexual misconduct with other girls living in his household raised at least one permissible inference. That testimony supported the inference that Petitioner intended to engage in conduct for the purposes of sexual gratification and that, therefore, Petitioner's actions in placing the victim's face in his lap so that he could ostensibly relieve her headache were *not* mere misunderstandings or mistakes. Because at least one permissible inference can be drawn from the evidence admitted pursuant to Idaho Rule of Evidence 404(b), Petitioner cannot establish that the introduction of that evidence violated his due process rights.

For this reason, Petitioner is not entitled to relief on Claim 4.

## CONCLUSION

The Court concludes that the Idaho Court of Appeals' decisions rejecting Claims 1, 2, and 3(a), were not unreasonable applications of clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts presented in state court. Additionally, the Court concludes, on de novo review, that Claims 3(b) and 4 fail on the merits. Therefore, the Petition will be denied.

## ORDER

**IT IS ORDERED:**

1.     Petitioner's Motion for Enlargement of Time to respond to Respondent's Answer (Dkt. 19) is GRANTED.

**MEMORANDUM DECISION AND ORDER - 25**

2.      Petitioner's Motion for Additional Enlargement of Time (Dkt. 21) is

GRANTED.

3.      Respondent's Motion for an Extension of Time to file his sur-reply (Dkt.

23) is GRANTED.

4.      The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED, and this entire

action is DISMISSED with prejudice.

5.      The Court does not find its resolution of this habeas matter to be reasonably

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a

timely notice of appeal with the Clerk of Court. Petitioner may seek a

certificate of appealability from the Ninth Circuit by filing a request in that

court.

DATED: **August 21, 2015**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 26**